JACKSON, ex dem. Gillet, *vs.* HILL.

A *deed* requiring the approbation of a third person to render it valid, although executed before, becomes operative from the time that such approbation is in fact given.

A possession under a *quit-claim* deed obtained from a *naked possessor* without color or claim of title, and no valuable consideration paid, is not such an *adverse possession* as renders void a deed from the owner to a *bona fide* purchaser, executed during the continuance of such possession.

THIS was an action of ejectment, tried at the Seneca circuit in June, 1828, before the Hon. ENOS T. THROOP, then one of the circuit judges.

The plaintiff claimed to recover part of lot No. 93, Junius, under a conveyance to Gillet, bearing date 29th May, 1809, executed by *William Sagaharre,* identified as the son and only child of *Lieut. John Sagaharre,* an Indian, to whom the lot was granted for military services during the revolutionary war. By an act passed in 1809, 2 *R. L.* 175, the heirs of Indians to whom lands were granted for military services are rendered capable of taking and holding such lands by descent, and conveyances executed by them are declared valid if executed with the approbation of the surveyor general, to be expressed by an endorsement on the conveyance. On the conveyance produced was an endorsement of the surveyor general, signifying his approbation of the same, under date of 26th April, 1810.

The defendant produced the *record* of a deed of the same lot from *William Sagaharre* to J. B. Murray and J. P. Mumford, bearing date 28th February, 1810, and recorded in the ensuing month. He also produced a *record* of a certificate

of approbation purporting to have been given by the surveyor general and to have been endorsed on the deed. It was objected that the original certificate ought to be produced, and the judge sustained the objection. No evidence of the *identity* of the grantor appears to have been given. The following facts were also shewn on the part of the defendant : H. W. Dobbin in 1804 took possession of the lot, it then being wholly uncultivated, as a *squatter* without color of title, and held the possession until 1808, when an action of ejectment having been brought against him by Murray and Mumford, he executed to them a quit-claim deed of the lot, and took charge of it for them until 1813 ; the only consideration for the conveyance being the discontinuance of the suit. From 1813 no one was in possession of the premises claimed until 1823, when a man entered into possession and shortly after died. In 1827, the defendant entered, but under what claim or color of right, if any, was not shewn, nor was it pretended that he entered under Murray and Mumford. The defendant's counsel insisted that the deed to the lessor of the plaintiff was void, 1. Because the approbation of the surveyor general was not a simultaneous act with the conveyance ; and 2. That the land at the date of the conveyance was held adversely. The judge overruled the objections, and the jury under his charge found a verdict for the plaintiff, which was now moved to be set aside.

*D. Cady*, for the defendant.

*J. A. Spencer*, for the plaintiff.

*By the Court*, SUTHERLAND, J. I am inclined to think the deed to Gillet was good from the time when the approbation of the surveyor general was endorsed. It then became a deed executed with his approbation. A deed takes effect from its delivery. The time when it is actually signed by the grantor is not material. In the absence of all evidence to the contrary, it will be presumed to have been executed and delivered when it bears date. Though it had been delivered without the certificate of the surveyor general, and consequently without passing any title to the grantee, still it was a

deed well executed and acknowledged on the part of the grantor, and was capable of becoming effectual when the necessary certificate was obtained. It may be presumed to have been again delivered, if such delivery be necessary to give it effect.

There was no adverse possession when the deed was executed. Dobbin entered in 1804 *as a mere squatter, without any color of title,* and in 1808 conveyed the lot to Murray and Mumford by a quit-claim deed, without any valuable consideration. The nominal consideration was the discontinuing by Murray and Mumford of an ejectment suit which they had brought against him for the same lot. They knew that Dobbin was a mere naked possessor without any claim of title. This is apparent on the face of the transaction, and their possession acquired in this manner was merely a continuation of Dobbin's, and of precisely the same character. The giving of a quit-claim deed under such circumstances did not change the character of the possession. It remained the same as though Dobbin had surrendered it to Murray and Mumford without deed, or had continued in possession himself. They acquired the possession by the voluntary surrender of Dobbin, and not under a recovery in ejectment; and the fact that they had commenced an ejectment suit for the lot incidentally mentioned in the case, cannot affect or give color of title to their subsequent possession. *Jackson* v. *Frost,* 5 *Cowen,* 350. *Jackson* v. *Thomas,* 16 *Johns. R.* 301. *La Frambois* v. *Jackson,* 8 *Cowen,* 590. It did not appear upon trial that the possession of Murray and Mumford continued later than 1813. Dobbin remained in possession as their agent down to that time. From 1813 to 1823 there is no evidence that the premises were occupied at all. In 1823 a man went into possession who soon afterwards died, when the defendant entered, but by what authority does not appear. It was not pretended however that he claimed or held the possession under Murray and Mumford. There is no pretence therefore of a continued adverse possession.

The counsel for the defendant, upon the argument of the case, relied solely on the objections taken to the plaintiff's

deed, on the ground of an adverse possession when it was given, and the want of the certificate of the surveyor general at the time when the deed bears date.

Motion for new trial denied.